By the Court, Comstock, J.
It appears, from the testimony of R. M. Hough and of Andrew Brown, that those two per-? sons, in behalf of two firms in Chicago to which they respectively belonged, conversed with the defendant. at -Buffalo, concerning the transportation of the freight of their firms from Chicago to Hew York and Boston. Some progress was made in the negotiation, and, as they testified, the defendant made proposals which they did mot then accept. . They were on their way east, and agreed to write to the defendant within ten days. Accordingly, within ten days, they wrote as follows:
“Hew York, June 30,1853.
“Wm. 0. Brown, Esq., Buffalo:
“We accept of your proposition for our entire freight from Chicago to Hew York and Boston. We include some nine or ten thousand hides. The price of freight is understood to be nine .dollars through to Hew York, and ten dollars through to Boston, with one dollar additional if .sent by railroad. • You will acJcnovJledge the acceptance of the above, and direct your communication to Andrew Brown, Monson, Mass.-. • .. .
“ANDREW BROWN & Co.,
“R, M. & O. S: HOUGH."
*113 At the trial, it was claimed on the part of the plaintiff, that the contract in question was made by the proposal of the defendant in the conversation at Buffalo, and the written acceptance thereof contained in the above mentioned letter. The defendant insisted that no contract had been proved, and requested the judge so to instruct the jury. He refused so to hold, and instructed the jury to inquire whether there was a proposition made by the defendant at Buffalo to carry the freight as testified to by the two witnesses above named, and whether the said letter was or was not an acceptance of such proposition. If they should find affirmatively upon these • questions, he further instructed them that the plaintiff was entitled to a verdict; otherwise not. The defendant excepted.
If a definite proposal was made by the defendant at Buffalo to carry the freight of the two Chicago firms, and if the letter of June 30 amounted to an unqualified and final acceptance of that proposal, there is no difficulty in finding that the defendant’s contract was several with each of the firms, as the plaintiff claims that it was. The firms were not united in interest, and there is no pretence that the negotiation at Buffalo contemplated a joint contract with them. They were engaged in the same business at Chicago, and a contract upon the same terms was contemplated with each of them. But one proposal was, therefore, made in the conversation with the representatives of the two firms; but that was, in effect, a proposal to each of them. Their acceptance, therefore, although contained in a letter signed on behalf of both firms, and joint in its mode of expression, should be construed as a several acceptance by each. So far, there is no difficulty in the case.
But, upon a careful consideration of the letter of June 30, we are of opinion that It was not intended, and cannot be construed, as the consummation of a contract; and, on this ground, we think that the jury should have been instructed in the manner requested by the defendant. If it was intended to leave it to the jury to say what was the meaning of the letter, the error is plain, because the construction of language «clearly ascertained, whether in writing or not, belonged to the *114 court, and not to the jury. But there was some obscurity in the evidence as to the exact terms of the proposal made orally át Buffalo; and, therefore, as I infer, the true meaning of the, charge was, that the jury should first ascertain precisely what that proposal was, and then see whether the terms of the contract, as stated in the letter, were, in all respects, the same. If they found the verbal proposal and the letter thus to agree, then they were to find that the contract was complete. This is the view of the charge most favorable to the plaintiff; but there is still a difficulty which is insuperable.
And the difficulty is this: Whatever may have been the terms of the contract proposed at Buffalo, and even conceding them to be the very same suggested in the letter of June 30, still the contract was not closed by that letter. It was, in itself, but a mere proposal of a contract, on the terms therein stated; or, if more than that, it, nevertheless, sets forth the understanding which the writers had of the agreement which the defendant had offered to enter into, and it then calls upon him to express, by letter to them, his own assent to the contract, as thus understood and stated. The plaintiff’s firm had a right, and they evidently preferred, to have the contract - reduced to writing. Instead, therefore, of simply saying to defendant in their letter, “We accept your proposal,” thus leaving the exact terms of the agreement open to question and doubt, and perhaps contradiction, they go on and state, with precision, that the defendant is to take their entire freight, including nine or ten thousand hides. The prices are then stated for transportation, to New York and Boston respectively, with the addition to be paid in case of carriage by railroad. They then say: “You will acknowledge the acceptance of the above, and direct your communication,” &c.' This language, in such a connection, can mean nothing else than that the defendant was expected to signify his assent to the terms thus set forth. That being done, the agreement would be complete, and it would also be in writing, so as to leave no room for future controversy. This, we are satisfied, is the true interpretation of the letter; and it follows, that no contract *115 was made consisting merely of the proposal at Buffalo, and the letter of the two firms referring to that proposal. It was, therefore, erroneous to leave it to the jury to find that a contract was, in fact, so made.
Upon another ground, the ruling was incorrect. The two witnesses called to establish the alleged agreement, were the persons with whom the defendant had the conversation at Buffalo. Neither of them swore to a proposal on the part of the defendant which was precisely covered by the letter of June 30. On the contrary, (without noting other discrepancies), each of them testified that the contract then proposed and talked about limited the amount of freight to be carried to fifteen hundred tons. The letter, on the other hand, said to the defendant, “We accept your proposal;” but “ our entire freight" must be included. Aside from the difficulty already considered, this was only a qualified acceptance, which required a further communication in order to a completion of the contract. In such a state of proof, there was no question for the jury, because they could not rightfully find that a contract was made out of such materials.
' It appears that the defendant did, on the 2d of July, reply to the letter of the 30th of June. The plaintiff did not produce this reply on the trial, and his witness, by whom it was received, disputed the accuracy, in one or two particulars, of the copy which the defendant exhibited and verified. This part of the case need not be examined or further stated, because it is not a question before us whether a contract came into existence out of any written correspondence, or in any other manner, after the letter of June 30 was sent. The jury were directed to find a verdict for the plaintiff, if at all, upon the force of that letter alone, as an acceptance of a verbal proposal made at Buffalo. That direction took from them all other questions, if there were any other worthy of a serious consideration.
The judgment must be reversed, and a new trial granted.
> All the judges concurring,
Judgment reversed, and new trial ordered.